# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GABRIEL DIXON,

       Petitioner,

v.                                                      Case No. 8:15-cv-482-T-36CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## ORDER

       Petitioner Gabriel Dixon, a Florida prisoner, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Pinellas County convictions. (Dkt. 1). In the response (Dkt. 6), Respondent does not contest the petition's timeliness. Dixon filed a reply. (Dkt. 13). Upon consideration, the petition will be DENIED.

## Procedural History

       Dixon was convicted after a jury trial of first degree murder (count one) and attempted first degree murder (count two). (Dkt. 8, Ex. 3). The state court sentenced him to life in prison on count one and 30 years in prison on count two. (Dkt. 8, Ex. 4). The state appellate court *per curiam* affirmed. (Dkt. 8, Ex. 12). Dixon filed a motion and an amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 8, Exs. 14, 16). The state court denied his claims. (Dkt. 8, Ex. 17). The state appellate court *per curiam* affirmed the denial of relief. (Dkt. 8, Ex. 19).

## Standard Of Review

Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement.").

The state appellate court affirmed the denial of postconviction relief in a *per curiam* decision. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

## Ineffective Assistance Of Counsel

Dixon alleges ineffective assistance of trial counsel. His claims are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). Dixon must demonstrate that his counsel performed deficiently in that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Dixon must also show that he suffered prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Obtaining relief on a claim of ineffective assistance of counsel is difficult because federal habeas review is "doubly" deferential to counsel's performance and the state court's decision. *Richter*, 562 U.S. at 105.

**Discussion**

<u>Ground One</u>

Dixon contends that trial counsel was ineffective in failing to request an independent act jury instruction. Dixon and three co-felons were accused in the murder of Joseph Shaw and the attempted murder of Shawanda Larry, who were shot during a robbery. Dixon concedes that he participated in the robbery. But he claims that he did not know a firearm would be used and that he left the scene before the shootings. Dixon therefore claims that the murder and attempted murder were independent acts of his co-felons. The state court denied Dixon's claim:

> Defendant claims that counsel was ineffective for failing to request a jury instruction on "independent act." According to the facts as alleged by Defendant in his motion, on the night of the murder, he agreed to participate in a robbery of the victim because his cofelons convinced him that his only role in the robbery would be to incapacitate the victim by tying him up. Defendant claims that he did not know that firearms would be used during the robbery. Defendant claims that upon arriving at the residence, Defendant and his cofelons grabbed the victim, Joseph Shaw, outside his house and beat him until they were able to force him inside. Once inside, they discovered the presence of the other victim, Shawanda Larry, and confined her in a bathroom. Defendant asserts that several of his cofelons beat and kicked Shaw, and dragged him into the bedroom where Defendant tied up Shaw with a phone cord. Defendant claims that at that point, after he had tied up Shaw, he heard Ms. Larry scream and then became aware that one of his cofelons, Brown, had a gun and was holding the gun to Mr. Shaw's head. Defendant claims that he then abandoned the robbery and left the residence. He claims that while heading home on foot, he heard gunshots from inside the residence, and that his cofelons later picked him up and gave him a ride home.

> The "independent act" doctrine applies when a defendant, who previously participated in a common plan, does not participate in acts committed by his cofelon "which fall outside of, and are foreign to, the common design of the original collaboration." <u>Bradley v. State</u>, 33 So. 3d 664, 675 (Fla. 2010), quoting <u>Willacy v. State</u>, 967 So. 2d 131, 141 (Fla. 2007); <u>see also</u> <u>Ray v. State</u>, 755 So. 2d 604, 609 (Fla. 2000); <u>see also</u> Fla. Std. Jury Inst. (Crim.) 3.6(*l*). However, a defendant's absence when the crime occurred does not establish, in and of itself, that the crime was an independent act of another. <u>Jackson v. State</u>, 18 So. 3d 1016, 1026 (Fla. 2009), citing <u>Ray</u>, 755 So. 2d at 609. Indeed, where a defendant "was a willing participant in the underlying felony and the murder resulted from forces which they set in motion, no independent act instruction is appropriate." <u>Ray</u>, 755 So. 2d at 609, citing <u>Lovette v. State</u>, 636 So. 2d 1304 (Fla. 1994). Furthermore, an "independent act" defense cannot apply when

death was a foreseeable result of the original plan. Bradley, 33 So. 3d at 675; citing Archer v. State, 613 So. 2d 446, 448 (Fla. 1993) (holding that the independent act theory is inappropriate when the defendant created the situation and the victim's death was a natural and foreseeable result of forces which the Defendant set in motion).

In his motion, Defendant claims that the shooting of M[r]. Shaw and M[s]. Larry was an independent act of cofelon Brown, who "flipped out" during the commission of the robbery. Defendant claims that the independent act instruction was applicable, because he thought that he was participating in an unarmed robbery in which lethal force was not contemplated, his role in the robbery was limited to tying up the victim, and he abandoned the robbery after hearing Ms. Larry scream and seeing cofelon Brown with a gun. For these reasons, Defendant claims that the murder of Mr. Shaw and attempted murder of Ms. Larry were outside the scope of and not a foreseeable consequence of the underlying robbery. Defendant asserts that he was prejudiced by counsel's failure to request the independent act instruction because in the absence of this instruction, the jury had no legal basis on which to consider Defendant's version of events while determining its verdict.

Defendant's argument is without merit. An independent act instruction would not have been appropriate in this case, as Defendant was a willing participant in the underlying robbery and both the murder and attempted murder were foreseeable results of forces which Defendant set in motion. According to Defendant's motion, not only was he a willing participant in the underlying robbery, he was the one who bound Mr. Shaw's hands with the phone cord. In fact, Defendant bound Mr. Shaw's hands so tightly that the medical examiner had to cut the cord in order to remove it. Ms. Larry testified at trial that upon entering the house, the robbers proceeded to beat Mr. Shaw, "stomping him and kicking him," and continued to kick him while making him crawl to the back bedroom, where Defendant bound his hands. As a principal to the robbery, Defendant is responsible for his cofelons beating Mr. Shaw, and Defendant himself bound Mr. Shaw's hands, making it impossible for Mr. Shaw to defend himself. It is clear that the underlying home invasion, robbery, and physical attack of Mr. Shaw set in motion his murder, and that Mr. Shaw's murder was a natural and foreseeable culmination of the level of violence used by all four cofelons in executing the robbery. See Bradley, 33 So. 3d at 675 ("[E]ven if the underlying criminal enterprise was merely to 'beat some sense' into [the victim], the beating would clearly be considered a foreseeable force which set in motion the killing."). Although Defendant did not himself pull the trigger, he fully participated in creating the circumstances that directly produced both Mr. Shaw's death and the shooting of Ms. Larry. See cf. Jackson, 18 So. 3d at 1026.

The independent act doctrine likewise does not apply when the evidence demonstrates that the murder was committed in furtherance of the initial criminal scheme. Thomas v. State, 787 So. 2d 27 (Fla. 2d DCA 2001), citing Lovette, 636 So. 2d 1304 (rejecting independent act instruction where murders committed to lessen the possibility of detection and apprehension of robbers). In this case, Ms. Larry testified at trial that she saw the face of one of the robbers when his mask fell off, and

recognized his identity. Ms. Larry testified that after Mr. Shaw was shot, one of the robbers said that "if you don't go back in there and kill [her], we going to kill you." At that point, the robber who she recognized as Joseph Simmons came back in and shot her three times in the head. Therefore, the evidence presented at trial supports the conclusion that the attempted murder of Ms. Larry was committed in an effort to lessen the possibility of detection and apprehension of the cofelons, and was thus committed in furtherance of the underlying robbery.

Furthermore, "a shooting during an armed robbery is a foreseeable event." Cannon v. State, 18 So. 3d 562, 564 (Fla. 1st DCA 2009), citing Washington v. State, 873 So. 2d 1268, 1270 (Fla. 4th DCA 2004) ("A shooting that occurs during an armed robbery with a firearm does not exceed the scope of the armed robbery so that an independent act instruction is required."). Although Defendant contends that he was unaware that the robbery scheme involved the use of firearms until just before Mr. Shaw was shot, the testimony of Ms. Larry at trial directly contradicts this assertion. Ms. Larry testified that on the night the robbery took place, she heard a knock on the front door and as soon as she opened the door one of the robbers was pointing a gun in her face. Ms. Larry further testified that she was positive that all four of the robbers were armed with firearms during the commission of the robbery.

For the foregoing reasons, the "independent act" jury instruction would not have been appropriate in this case. Therefore, Defendant cannot show that counsel's failure to request such an instruction constituted deficient performance falling below prevailing professional standards. See Zakrzewski, 866 So. 2d at 692. Counsel cannot be deficient for failing to raise a meritless claim. Teffeteller v. Dugger, 734 So. 2d 1009, 1023 (Fla. 1999); accord Ferrell v. State, 29 So. 3d 959, 976 (Fla. 2010). Because Defendant has failed to satisfy the deficiency prong of Strickland, the inquiry ends, and this Court need not determine if the prejudice prong has been satisfied. See Maxwell v. Wainwright, 490 So. 2d 927; Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010). Accordingly, this claim is denied.

(Dkt. 8, Ex. 17, pp. 99-102) (court's record citations omitted).

As the state court explained, the independent act doctrine is meant "to exonerate the nonparticipant from acts committed by a co-felon that are beyond the scope of the original plan." *Jackson v. State*, 18 So.3d 1016, 1026 (Fla. 2009). In its detailed order, the state court thoroughly analyzed the applicability of an independent act instruction. This Court must accept the state court's conclusion that, under Florida law, the evidence did not warrant this instruction. "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not

second-guess them on such matters.'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Further, as the state court found, counsel cannot be ineffective in failing to raise a meritless issue. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Dixon does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground One.

Ground Two

 Detective Laura Spelman testified that during the investigation, she received descriptions of four suspects, including Dixon. After she testified to Dixon's description, Dixon stood for the jury at the prosecutor's request:

> Q I wanted to ask you about the physical descriptions during the course of your investigation. Would it be fair to say that you developed four suspects in this case?
>
> A Yes.
> . . .
>
> A The second suspect that was identified was Mr. Dixon.
>
> Q Okay. And can you give us a physical description of Mr. Dixon?
>
> A Yes. Mr. Dixon was identified as having a very large build, being a black male, tall, with a large build and short hair.
>
> Q And during the time when you had contact with Mr. Dixon back in 2007, did he have short hair back then?
>
> A Yes, he did.
>
> [STATE]: Judge, at this time I would ask the Court to direct Mr. Dixon to

stand so that the jury might get a view of his description.

        THE COURT: What says the defense?

        [COUNSEL]: It's okay.

        THE COURT: Mr. Dixon, sir, would you please stand up?

        (WHEREUPON, DEFENDANT STANDS.)

        THE COURT: Okay. Thank you.

(Dkt. 8, Ex. 2, Vol. III, pp. 320-21).

Dixon alleges that trial counsel was ineffective in failing to object when Detective Spelman

testified to hearsay and identified him in court. The state court denied Dixon's claim:

> Defendant claims that counsel was ineffective for failing to object to "inadmissible hearsay testimony and in-court identification" by Detective Laura Spelman of the Clearwater Police Department . . .

> Defendant claims that because Detective Spelman did not disclose precisely how she obtained Defendant's description, the "inescapable inference to be drawn from these statements and the Court's directing [him] to stand . . . was that an unidentified [non-testifying] eyewitness had furnished the police with evidence of [his] guilt." Defendant asserts that this amounts to inadmissible hearsay and improper identification. Defendant asserts that he was prejudiced by this statement of identification because it "undercut the defense without any basis in evidence."

> [ ] Defendant argues that because the case was "based on the credibility of the testimony," failing to object to this identification and having Defendant stand "tipped the scale in favor of the prosecution's case." Defendant argues that . . . Detective Spelman's description of him having short hair in 2007 bolstered the credibility of Shawanda Larry, who testified that only one of the robbers had short hair.

> The Court finds that Defendant is not entitled to relief on this claim, as he fails to meet his burden of demonstrating that counsel's failure to object to Detective Spelman's testimony resulted in prejudice sufficient to undermine confidence in the outcome of the case. See Haliburton, 691 So. 2d at 470; Rutherford, 727 So. 2d 216. In addition to this identification by Detective Spelman, the State presented substantial evidence that Defendant was one of the four individuals who participated in the robbery. The State presented evidence that Defendant's DNA was present on the phone cord that was used to bind the victim's hands. The State also presented an audio recording of Defendant's interview with law enforcement, in which he admitted post-Miranda to

participating in the robbery and tying up the victim. During the course of this interview, Defendant described the plan for the robbery, described what he was wearing during the robbery, outlined the timeline of events that took place during the robbery, admitted to tying up Shaw, and claimed that he left the scene before either victim was shot. Therefore, even if counsel had objected to Detective Spelman's description and identification of Defendant as one of the four suspects developed in this case, this Court finds that it is unlikely that the outcome of the trial would have been different in light of the DNA evidence presented at trial and Defendant's own admissions regarding his participation in the robbery. Because Defendant has failed to satisfy the prejudice prong of the <u>Strickland</u> test, this court need not address the deficiency prong. <u>See</u> <u>Maxwell</u>, 490 So. 2d 927; <u>Gonzalez v. State</u>, 99 So. 2d 1017 (Fla. 2008). Accordingly, this claim is denied.

(Dkt. 8, Ex. 17, pp. 102-03) (court's record citations and footnote omitted).

The record shows that the State presented DNA evidence and Dixon's statements to police, both of which were relevant to establishing his participation in the robbery. (Dkt. 8, Ex. 2, Vol. III, pp. 327-54; 381-88). In light of this evidence, Dixon has not shown a reasonable probability that the outcome of trial would have been different if counsel had objected during Detective Spelman's testimony. Dixon has not demonstrated that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Two.[1]

Ground Three

Dixon claims that trial counsel was ineffective in failing to object to Detective Kerri Spaulding's testimony about her investigation into an assault on Dixon. Detective Spaulding testified:

> Q. You then got involved in another investigation that actually occurred that same day where there was an assault on the defendant, Gabriel Dixon; is that correct?
>
> A. That's correct.

---

[1] Dixon also alleges that trial counsel was ineffective in failing to object when the prosecutor referenced the descriptions in closing arguments. That claim is addressed in Ground Four.

Q. And because of that you actually went to go interview Gabriel Dixon to make sure, basically, what the involvement was with this crime scene; is that correct?

A. Yes, it is.

Q. And just to kind of set it up, the assault that occurred on Mr. Dixon, the defendant, the reason you were investigating it is because those people who perpetrated that assault on the defendant were actually friends of Joey Shaw; is that correct?

A. Yes, that is correct.

Q. So did you think this could have been some kind of retaliation or have some kind of link to the murder?

A. Yes, I did.

(Dkt. 8, Ex. 2, Vol. III, pp. 290-91).

The state court denied Dixon's claim that counsel was ineffective in failing to object to the questions as leading, irrelevant, and calling for hearsay:

> Defendant asserts that counsel was ineffective for failing to object to Detective Kerri Spaulding's recounting the sequence of the investigation leading to Defendant's arrest. Detective Spaulding testified regarding an investigation of an assault on Defendant that occurred shortly after the robbery and murder, and testified that she believed this assault could have been some kind of retaliation for the murder. Defendant asserts that counsel should have objected to this line of questioning as leading, irrelevant, and hearsay. Defendant also appears to argue that counsel should have objected to the State making reference to this testimony during closing argument, as this amounted to the State "vouching for the credibility of witnesses who did not testify." Defendant asserts that this testimony was prejudicial because it was irrelevant, distracted the jury from the issue of whether he committed the offense beyond a reasonable doubt, diverted the jury's focus from the offense charged to collateral acts, and suggested "guilt by association."

> [] Defendant asserts that had counsel objected to Detective Spaulding's testimony, there is a reasonable probability that the jury would not have heard that Defendant was attacked by friends of the victim or that this attack was in retaliation for the murder. Defendant argues that the only inference to be drawn by this testimony was that Defendant was attacked because he was indeed involved in the murder, and that had the jury not heard this testimony, the jury would not have been left to make this inference and instead would have weighed only the evidence presented at trial.

The Court finds that Defendant has not demonstrated that a reasonable probability

actually exists that the outcome of the trial would have been different but for counsel's failure to object to Detective Spaulding's testimony. Detective Spaulding's testimony regarding the investigation into the assault on Defendant dealt with the issue of how law enforcement came to identify Defendant as being one of the persons involved in this crime. As noted in Ground Two, *supra*, there was substantial evidence presented identifying Defendant as being involved in the crime, specifically DNA evidence and Defendant's own admissions, notwithstanding any testimony regarding law enforcement's investigation and identification of Defendant as a suspect. The assertion that had the jury not heard this testimony, they may have drawn a different inference based on the other evidence presented a trial is too speculative to demonstrate that the outcome of the trial would actually have been different. See Maharaj v. State, 778 So. 2d 944, 951 (Fla. 2000) ("postconviction relief cannot be based on speculation or possibility."). Because Defendant has failed to satisfy the prejudice prong of the Strickland test, this court need not address the deficiency prong. See Maxwell, 490 So. 2d 927; Gonzalez v. State, 99 So. 2d 1017 (Fla. 2008). Accordingly, this claim is denied.

(Dkt. 8, Ex. 17, pp. 103-04) (court's record citations omitted).

The state court reasonably denied relief. As the state court concluded, Dixon's speculative claim does not establish prejudice in light of the evidence that Dixon participated in the robbery. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (a federal court may not grant habeas relief "on the basis of little more than speculation with slight support."); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Dixon has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Ground Three does not warrant relief.[2]

Ground Four

Dixon claims that trial counsel was ineffective in failing to object to improper prosecutorial comments. Dixon must demonstrate that the comments were both improper and prejudicially affected his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). "[I]t is not enough

---

[2] Dixon's claims that counsel was ineffective in failing to object when the prosecutor referred to the assault are addressed in Ground Four.

that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation marks and citations omitted).

A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole because "[c]laims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record." *Id. See also United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

I.      Opening Statements

During his opening statement, the prosecutor referenced the assault on Dixon:

The streets started talking and law enforcement started following those leads.

Law enforcement was directed to the defendant and his involvement because what ended up happening shortly after this is law enforcement got a call that the defendant became a victim of an assault. Two friends of Joey Shaw came looking for the defendant thinking he was involved. Law enforcement came out and talked to the defendant.

(Dkt. 8, Ex. 2, Vol. II, pp. 129-30).

Dixon alleges that "[a]lthough these 'two friends of Joey Shaw' were neither deposed nor placed under subpoena to testify, trial counsel did not object to mention of their alleged motivation or thought process on the basis of hearsay, relevance, or speculation." (Dkt. 1, p. 8). Dixon appears to raise an independent claim that counsel was ineffective in failing to object to these statements. However, he did not satisfy the requirement that he exhaust his claim in state court before presenting

it in his habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A). Dixon did not specifically claim in his amended postconviction motion that counsel was ineffective in failing to object to the prosecutor's opening statement. (Dkt. 8, Ex. 16, pp. 76-81). Dixon cannot return to state court to raise the claim in an untimely postconviction motion. *See* Fla. R. Crim. P. 3.850(b). Accordingly, the claim is procedurally defaulted, and Dixon does not show that an exception applies to overcome the default. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").

Notwithstanding the default, Dixon fails to show entitlement to relief. Attorneys use opening statements to set out what they expect the evidence to show. *See United States v. Lizon-Barias*, 252 Fed. App'x 976, 978 (11th Cir. 2007) ("An opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow, and is not an occasion for argument." ); *Occhicone v. State*, 570 So.2d 902, 904 (Fla. 1990) ("Opening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence.").

The prosecutor called Detective Spaulding to testify about the assault on Dixon and its connection to her investigation. The prosecutor also played a recording of Dixon's statement to police, in which he addressed the assault.[3] This evidence was not inconsistent with the prosecutor's

---

[3] The statement provided:

DETECTIVE SPELMAN: [ ] Let me ask you one thing. Detective Spaulding interviewed you the day that this happened after you were shot at on your street, right? Did you believe that that was retaliation for this?

(continued...)

statements, and Dixon does not establish that his attorney had any reason to believe the State would

not present this evidence during the trial. As Dixon does not show that the comments were improper,

he fails to establish that counsel was ineffective in not objecting. Further, in light of the evidence of

Dixon's guilt, he has not shown a reasonable probability the outcome of trial would have been

different had counsel objected. Dixon is not entitled to relief on this claim.

## II.   Closing Arguments

The remainder of Dixon's claims concern counsel's failure to object to allegedly improper

statements in closing arguments. "[T]he 'sole purpose of closing argument is to assist the jury in

analyzing, evaluating and applying the evidence.'" *United States v. Pearson*, 746 F.2d 787, 796 (11th

Cir. 1984) (quoting *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981)). A prosecutor may

comment on the evidence and express the conclusions he contends the jury should draw from the

evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). *See also McArthur v. State*,

---

[3](...continued)
MR. DIXON: (Unintelligible) fittin' to die, your homeboys going to die and I'm starting with you.

DETECTIVE SPELMAN: Do you have any idea how they knew that you were involved in this at that time?

MR. DIXON: No.

DETECTIVE SPELMAN: Okay.

DETECTIVE MONTE: How did the word get out so quick? I mean, they were at your house that morning before anyone even kn[e]w about - - did you tell anybody?

MR. DIXON: No.

DETECTIVE MONTE: Do you think somebody else told somebody about it?

MR. DIXON: I really don't know because when I woke up that morning, I went down there to talk to my neighbor, and the car pulls up and he talks about his homey dead and you all going to die and all your homeboys going to die, and he drove off and he came back with (unintelligible).

(Dkt. 8, Ex. 2, Vol. III, pp. 352-53).

801 So.2d 1037, 1040 (Fla. 5th DCA 2001) ("The courts generally allow wide latitude in closing arguments by permitting counsel to advance all legitimate arguments and draw logical inferences from the evidence.").

A.

Dixon contends that trial counsel should have objected when the prosecutor improperly bolstered the State's case by saying that Dixon's attackers had the information right and knew that Dixon was involved. The state court denied Dixon's claim:

> Defendant argues that counsel was ineffective for failing to object when the prosecutor engaged in improper argument to the jury during rebuttal closing. Defendant claims that the prosecutor improperly bolstered his case by stating that "guys that live in the neighborhood had the information right" and threatened Defendant "because they knew he was involved." Defendant asserts that this left the jury with the impression that these "guys" provided investigators with additional information that was not disclosed to the jury, and that this argument was therefore "clearly prejudicial."

> [ ] In his amended motion, Defendant asserts that had counsel objected to the multiple statements in the prosecutor's closing argument complained of within Ground Four, there is a reasonable probability that the outcome of the trial would have been different. Defendant argues that the evidence presented at trial did not foreclose the possibility that Defendant might have abandoned the robbery attempt, but that the weakness of the prosecution's case was strengthened by defense counsel failing to object to these statements during closing argument. Defendant argues that these errors may have played a substantial part in the jury's deliberation, as the jury may have reached its decision because of error without considering other reasons untainted by error that would have supported the same result.

> [A]ttorneys are permitted wide latitude in closing arguments, although they are not permitted to make improper argument and must confine their argument to the facts and evidence presented to the jury. Merck v. State, 975 So. 2d 1054, 1061 (Fla. 2007) ("Closing argument is an opportunity for counsel to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence."); Ford v. State, 702 So. 2d 279 (Fla. 4th DCA 1997); Franqui, 804 So. 2d at 1195. In this case, the State was commenting on the fact that Defendant was attacked by friends of the victim on the day after the murder, which led police to believe that this attack could have been some kind of retaliation or have some kind of link to the murder. This evidence was properly presented to the jury during Detective Spaulding's testimony. The court does not find this to be an improper argument but a permissible instance of the State offering inferences, which can be made, based upon the evidence. As this

argument is not improper, counsel was not ineffective for not objecting. <u>See</u> <u>Hitchcock</u>, 991 So. 2d at 361. Accordingly, this claim is denied.

(Dkt. 8, Ex. 17, pp. 107-08) (court's record citations omitted).

The state court reasonably denied relief. As the state court found, the prosecutor commented on and drew an inference from testimony that police believed the assault may have been in retaliation for Shaw's murder. Dixon has not shown that the comment amounted to improper bolstering, which occurs when "the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1313 (11th Cir. 2010) (quotation marks and citations omitted). A prosecutor may run afoul of the prohibition on bolstering "by indicating that information not before the jury supports the witness's credibility." *Id.* The prosecutor's comments did not suggest that the attackers gave police additional information that was not disclosed to the jury. Dixon has not established that the state court's ruling involved an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts. He is not entitled to relief on this claim.

<u>B.</u>

Dixon argues that counsel was ineffective in not objecting when the prosecutor made two references to the descriptions of the suspects in closing arguments. As pertinent to this claim, Detective Spelman testified that, according to the descriptions she received, all of the suspects besides Dixon had long dreadlocks. (Dkt. 8, Ex. 2, Vol. III, pp. 320-22). Shawanda Larry testified that she initially saw three perpetrators. (Dkt. 8, Ex. 2, Vol. II, pp. 145-46). She testified that one man had long dreadlocks in a ponytail. (*Id.*, p. 146). She testified that two had bandanas covering their faces from the nose down, and one had some sort of face covering with eye holes cut out. (*Id.*, pp. 146-47). She also testified that the fourth man, whose mask had fallen down so that she could see his face,

stayed near her in a bathroom during the events and shot her as all the robbers were leaving the house. (*Id.*, pp. 152-53, 156).

The prosecutor stated, "we know the defendant is involved in committing that robbery because he is one of the large men with no dreads wearing a ski mask and bandana based on Shawanda Larry's testimony." (Dkt. 8, Ex. 2, Vol. IV, pp. 429-30). The prosecutor later said, "Well, three of the four had dreads, and all had long dreads. This defendant was the only one with short hair. So it's consistent that one would wear a ski mask to cover up the fact that you're the only one without dreads." (*Id.*, p. 437). Dixon claims that the prosecutor incorrectly attributed the description of three men with dreadlocks to Shawanda Larry, and that "hearsay identification allowed the State to reason the Petitioner was the perpetrator who stood before Shawanda Larry," discrediting his abandonment defense. (Dkt. 1, p. 7).

Dixon's claim of ineffective assistance of trial counsel for failing to object to the prosecutor's statements is unexhausted because he did not specifically present it in his amended postconviction motion. (Dkt. 8, Ex. 16, pp. 70-75). Because Dixon cannot return to state court to raise the claim in an untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Notwithstanding the default, Dixon fails to show entitlement to relief.

Dixon has not shown that his counsel performed deficiently in not objecting. First, while counsel did not object to the prosecutor attributing the descriptions to Shawanda Larry, in counsel's closing argument, he disagreed with the State's contention that Larry identified three robbers as having dreadlocks. (Dkt. 8, Ex. 2, Vol. IV, pp. 441-42). Second, contrary to Dixon's claim, the remarks did not suggest that Dixon stood watch over Larry during the robbery. And any such suggestion would have been defeated by Larry's testimony that the person who stayed with her and shot her was co-

defendant Joseph Simmons, whom she personally recognized. (Dkt. 8, Ex. 2, Vol. II, pp. 152-53, 156). Finally, considering the significant evidence of Dixon's involvement in the robbery, he does not show a reasonable probability that the outcome of trial would have been different had counsel objected to the State's comments. Dixon is not entitled to relief on this claim.

 C.

Dixon argues that trial counsel was ineffective in failing to object when the prosecutor misrepresented his statements. The state court denied this claim:

> Defendant first asserts that counsel was ineffective for not objecting to the prosecutor "misrepresenting the Defendant's comments to investigators." In closing argument, the prosecutor stated that Defendant "knew Joey Shaw was going to get shot" and misrepresented his statements to law enforcement, quoting him as saying "I knew Brown was going to shoot him by the way he was carrying himself," when what he had really said when asked if he knew which one of his cofelons shot Shaw was "It was like Brown. It was like how he carry himself." Defendant asserts that this was prejudicial because it "seriously undercut" the theory of defense that Defendant did not know Brown had a gun and that the shootings were not a part of the robbery plan.

> [] In his amended motion, Defendant asserts that had counsel objected to the multiple statements in the prosecutor's closing argument complained of within Ground Four, there is a reasonable probability that the outcome of the trial would have been different. Defendant argues that the evidence presented at trial did not foreclose the possibility that Defendant might have abandoned the robbery attempt, but that the weakness of the prosecution's case was strengthened by defense counsel failing to object to these statements during closing argument. Defendant argues that these errors may have played a substantial part in the jury's deliberation, as the jury may have reached its decision because of the error without considering other reasons untainted by error that would have supported the same result.

> This claim is without merit. The Florida Supreme Court has held that wide latitude is afforded counsel during argument, logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. See Franqui v. State, 804 So. 2d 1185, 1195 (Fla. 2001). The State is permitted to comment on the evidence and testimony and offer inferences which may reasonably be drawn from the evidence. See Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985). Here, the State's comment stems from testimony which was properly presented to the jury at trial. Cf. Waterhouse, 792 So. 2d at 1190. During Defendant's recorded interview with law enforcement, which was presented at trial, the following exchange took place:

| | |
|---|---|
| DETECTIVE SPELMAN: | Okay. So you're maintaining that you were not in the house when the shots were fired? |
| DEFENDANT: | When the shots was, I was outside. I was on the street. |
| DETECTIVE SPELMAN: | How many shots did you hear? |
| DEFENDANT: | It was like I think four. |
| DETECTIVE SPELMAN: | Four shots. Okay. Do you know from what you've heard or what you saw which one of the three that stayed in the house shot Joey Shaw? |
| DEFENDANT: | It was like Brown. It was like how he carry himself. I can't see myself hanging around a person like that. |
| DETECTIVE SPELMAN: | Okay. Do you know either from what you saw that night or from what you've talked about since who was the one that pulled the trigger and shot Joey? |
| DEFENDANT: | Brown because he was the only one with the gun. |

Based on this exchange, and because Defendant's response was somewhat ambiguous, it was not unreasonable for the State to offer the inference that Defendant knew that Brown was going to shoot Mr. Shaw by the way he was carrying himself. Since the allegedly improper comment originated from facts presented at trial, and was a reasonable inference drawn from Defendant's exchange with law enforcement, it was proper. See Gonzalez v. State, 990 So. 2d 1017, 1028-29 (Fla. 2008) ("[The proper exercise of closing argument is to review the evidence and to explicate those inferences which may be reasonably drawn from the evidence.") (quoting Bertolotti, 476 So. 2d at 134). Therefore, counsel cannot be said to be deficient for failing to object to this statement. See Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection.").

Additionally, Defendant's assertions that the numerous alleged errors in the prosecutor's closing argument may have played a substantial role in the jury's deliberations do not establish a reasonable probability that the jury would have returned a different verdict in light of the evidence that was properly presented to the jury at trial, and amounts to speculation. See Waterhouse, 792 So. 2d at 1190. For the foregoing reasons, this claim is denied.

(Dkt. 8, Ex. 17, pp. 105-06) (court's record citations omitted).

For the reasons expressed by the state court, Dixon fails to show that the statement was not a

proper inference from the evidence, or that it prejudicially affected his substantial rights. Dixon has

not shown that the state court unreasonably concluded that he failed to establish either deficient performance or resulting prejudice. As the state court's ruling did not unreasonably apply *Strickland* or unreasonably determine the facts, Dixon is not entitled to relief on this claim.

<u>D.</u>

Dixon alleges that trial counsel was ineffective in failing to object when the prosecutor speculated about Dixon's thought process. The state court denied this claim:

> Defendant claims that counsel was ineffective for failing to object to the prosecutor's "speculating on the Defendant's thought process." Specifically, Defendant asserts that defense counsel should have objected to the following narrative in the prosecutor's rebuttal closing argument:
>
>> Of course, now Mr. Dixon knows that his DNA is [all] over that phone cord. Now he's got to try to minimize. But if I tell law enforcement that I got a ride home, then if there is a witness that saw me get out of the car, that will be consistent with having got back in the car and I'll have to later explain, well, we had a break up, and I forgot to tell you that I left early. Sets that up so when he gets back in the car - - he had plenty of time to think about this, folks. We're talking about months later when law enforcement presents him with the DNA. He can say he got back in the car in case anybody saw him get out of the car with these guys.
>
> Defendant asserts that this "imaginary account" of his thought process was objectionable because it was speculative, outside the scope of rebuttal argument, was not a reasonable inference that could be drawn from evidence, and discredited the theory of defense.
>
> [] In his amended motion, Defendant asserts that had counsel objected to the multiple statements in the prosecutor's closing argument complained of within Ground Four, there is a reasonable probability that the outcome of the trial would have been different. Defendant argues that the evidence presented at trial did not foreclose the possibility that Defendant might have abandoned the robbery attempt, but that the weakness of the prosecution's case was strengthened by defense counsel failing to object to these statements during closing argument. Defendant argues that these errors may have played a substantial part in the jury's deliberation, as the jury may have reached its decision because of the error without considering other reasons untainted by error that would have supported the same result.
>
> As previously indicated, the State is permitted to comment on the evidence and

testimony and offer inferences which may reasonably be drawn from the evidence. See Bertolotti, 476 So. 2d at 134. Contrary to Defendant's assertion, the statements in question here constituted a reasonable inference drawn from evidence properly presented at trial. Detective Spelman testified that she initially interviewed Defendant on December 5, 2007, at which time he completely denied his involvement with the crime. Evidence was presented that a DNA swab of Defendant was subsequently taken, and that Defendant's DNA was found on the phone cord used to bind the victim. Additionally, Defendant gave a tape recorded interview with law enforcement on January 4, 2008, which was played for the jury. During this interview, Defendant told law enforcement that he tied up the victim and left the scene before any shots were fired. Defendant further stated that his cofelons later picked him up while he was walking home. Detective Spelman testified that Defendant initially denied involvement, and it was only after Defendant was confronted with the fact that law enforcement had DNA evidence placing him at the scene that Defendant changed his story, admitted to being at the scene, and provided the statement described above. Therefore, the State offering an inference that Defendant fabricated his story only after being presented with DNA evidence months after the crime occurred was not unreasonable in light of the evidence presented at trial. As this argument is not improper, counsel was not ineffective for not objecting. See Hitchcock, 991 So. 2d at 361.

Furthermore, contrary to Defendant's argument, this account was not outside the scope of the defense's closing argument. Taken in context, it is clear that the State's argument was in response to the defense's version of events. Defense counsel argued that Defendant walked out of the house when he heard the woman scream, he heard the shots after he walked out of the house, and that his cofelons later picked him up and gave him a ride home. In context, the State's comment in question was preceded by a discussion of Defendant's statement to law enforcement that he left the scene and was picked up by his cofelons when he was about halfway home. For the foregoing reasons, this claim is denied.

(Dkt. 8, Ex. 17, pp. 108-09) (court's record citations omitted).

"A prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel." *United States v. Stanley*, 495 Fed. App'x 954, 957 (11th Cir. 2012). "[I]ssues raised by a defendant in closing argument are 'fair game for the prosecution on rebuttal.'" *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014) (quoting *United States v. Sarmiento*, 744 F.2d 755, 765 (11th Cir. 1984)). "[T]he idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole." *Darden*, 477 U.S. at 182 (citing *United States v.*

*Young*, 470 U.S. 1, 13 (1985)).

In his closing argument, defense counsel addressed the portion of Dixon's statement in which he said that he walked away from the house when he heard Shawanda Larry scream, and that his co-felons picked him up after they left and drove him the rest of the way home. (Dkt. 8, Ex. 2, Vol. IV, p. 452). In his rebuttal closing argument, the prosecutor argued that it did not make sense that Dixon's co-felons would pick him up if he had deserted them during the offenses. (*Id.*, pp. 468-69). The prosecutor theorized that once Dixon learned of the DNA evidence placing him in the house, he told the story that he left the house but was picked up later to minimize his involvement while explaining his having been dropped off after the crimes. (*Id.*, p. 469). Therefore, as the state court found, when taken in context, the prosecutor's statement was in response to the defense theory. And Dixon does not show that, viewed in this context, the comment was improper or prejudicially affected his substantial rights. As he has not shown that the state court's finding involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts, Dixon is not entitled to relief on this claim.

E.

Dixon argues that trial counsel should have objected to the prosecutor's comments about the jury instructions. The state court denied his claim:

> Defendant further claims that counsel was ineffective for failing to object when the prosecutor contravened the jury instructions. Specifically, Defendant asserts that the prosecutor stated that "you're not going to hear any type of abandonment instruction," however the attempted robbery instruction underlying Count One, First-Degree Felony Murder, provided that "[i]t is not an attempt to commit robbery if the defendant abandoned the attempt . . . ." Defendant asserts that this comment amounted to a gross misstatement of the law which "may have played a substantial part in the jury's deliberation and contributed to the actual verdict reached." Defendant asserts that as the jury found him guilty on Count One by general verdict, it is not clear whether the jury convicted him on the underlying felony of robbery or attempted robbery.

[] In his amended motion, Defendant asserts that had counsel objected to the multiple statements in the prosecutor's closing argument complained of within Ground Four, there is a reasonable probability that the outcome of the trial would have been different. Defendant argues that the evidence presented at trial did not foreclose the possibility that Defendant might have abandoned the robbery attempt, but that the weakness of the prosecution's case was strengthened by defense counsel failing to object to these statements during closing argument. Defendant argues that these errors may have played a substantial part in the jury's deliberation, as the jury may have reached its decision because of the error without considering other reasons untainted by error that would have supported the same result. Defendant further asserts that the misstatement of the abandonment instruction may have also affected the jury's consideration of the Defendant's claim of abandonment with respect to Count Two.

The Court finds that Defendant is not entitled to relief on this claim, as Defendant has failed to demonstrate that a reasonable probability actually exists that the outcome of the proceeding would have been different had defense counsel objected to the prosecutor's statements regarding the abandonment. The jury was instructed that what the attorneys say in their closing arguments is not evidence or instruction on the law. The jury was further instructed that it must follow the law as set out in the jury instructions, and that the case was to be decided only upon the evidence presented at trial and the jury instructions. The assertion that the prosecutor's statement may have affected the jury's deliberation remains too speculative to demonstrate that the outcome of the trial would actually have been different. See Maharaj, 778 So. 2d at 951. Accordingly, this claim is denied.

(Dkt. 8, Ex. 17, pp. 109-11) (court's record citations omitted).

The trial court instructed the jury that what the attorneys said in closing arguments was not evidence or the jury's instruction on the law, that it must follow the law as provided in the instructions, and that it must decide the case based only on the evidence and the instructions. (Dkt. 8, Ex. 2, Vol. IV, pp. 427, 496-97). The jury is presumed to have followed these instructions. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions."). Dixon does not argue, and the evidence does not show, that the jurors failed to follow their instructions. Accordingly, the state court did not unreasonably find that Dixon's claim was too speculative to establish prejudice. Dixon has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an

unreasonable determination of the facts. He is not entitled to relief on this claim.

Ground Five

Dixon argues that he is entitled to relief based on the cumulative effect of trial counsel's alleged errors. The state court denied this claim, finding that "where the alleged errors urged for consideration in a cumulative error analysis are individually either procedurally barred or without merit, the claim of cumulative error also necessarily fails. . . . Because each of Defendant's claims has been denied herein, this claim of cumulative error is also denied." (Dkt. 8, Ex. 17, p. 111).

Because Dixon has failed to establish any specific instances of ineffective assistance, he cannot show entitlement to relief on his cumulative error claim. *See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."). Dixon has not demonstrated that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Dixon is not entitled to relief on Ground Five.

Any claims not specifically addressed herein have been determined to be without merit.

It is therefore **ORDERED** that:

1. Dixon's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Dixon and to close this case.

3. Dixon is not entitled to a certificate of appealability ("COA"). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id*. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Dixon "must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Dixon has not made this showing. Because Dixon is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 26, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Gabriel Dixon
Counsel of Record